FILED
U.S. DISTRICT COURT

2005 JUL 28 P 4: 23

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

PHILLIP E. LOWRY (6603), and
RICHARD L. PETERSEN (9494), for:
**HOWARD, LEWIS & PETERSEN, P.C.**
ATTORNEYS AND COUNSELORS AT LAW
120 East 300 North Street
P.O. Box 1248
Provo, Utah 84603
Telephone: (801) 373-6345
Facsimile: (801) 377-4991

Our File No. 27,887

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILL MILLER TARBET and LISA MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>MATTHEW E. MILLER; ANGELES A. ACEITUNA, a.k.a. ANGELES A. MILLER; and JOHN AND JANE DOES I-VI.,<br><br>Defendants. | **NOTICE OF REMOVAL**<br><br>State Court Case No. 050401865<br><br>Judge Paul G. Cassell<br>DECK TYPE: Civil<br>DATE STAMP: 07/28/2005 @ 16:28:17<br>CASE NUMBER: 2:05CV00635 PGC |

As authorized by 28 U.S.C. §§ 1441, Matthew E. Miller and Angeles A. Aceituna ("defendants") hereby give notice of removal and represent as follows:

1.     On June 15, 2005, the plaintiffs commenced an action against defendants in the Fourth Judicial District Court for Utah County, State of Utah, and the case is now pending in that court.

2.     On July 8, 2005, defendants were served with a summons and the amended complaint. The initial complaint was not served on defendants.

3.     No further proceedings have been had in the state court.

4.     Plaintiff Jill Miller Tarbet is a citizen and resident of the State of Idaho.

5.     Plaintiff Lisa Miller is a citizen and resident of the State of Idaho.

6.     Defendants are citizens and residents of the State of Utah.

7.     Plaintiffs have, among other things, pleaded for relief based on the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1961 et seq.).

8.     This Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C.A. § 1331, and the action may therefore be removed to this Court pursuant to 28 U.S.C.A. § 1441(b).

9.     Copies of the Summons and First Amended Complaint served on the defendants are attached.

WHEREFORE, defendants request that this action be removed from the Fourth Judicial District Court for Utah County, State of Utah to this Court.

DATED this _28th_ day of July, 2005.

PHILLIP E. LOWRY, and
RICHARD L. PETERSEN, for:
HOWARD, LEWIS & PETERSEN, P.C.
Attorneys for Defendants

2

## **MAILING CERTIFICATE**

I hereby certify that a true and correct copy of the foregoing was mailed to the following, postage prepaid, this 28th day of July, 2005.

> Bruce W. Shand, Esq.
> 4505 S. Wasatch Blvd., Suite 340
> Salt Lake City, UT 84124
>
> Bradley L. Booke, Esq.
> Jeffrey D. Gooch, Esq.
> Ryan M. Springer, Esq.
> Moriarity, Gooch, Badaruddin & Booke, LLC
> 9 Exchange Place, Suite 700
> Salt Lake City, UT 84111
>
> Court Clerk
> Fourth District Court
> 125 North 100 West
> Provo UT 84601

*Keri Cheney*
SECRETARY

I:\Miller, Matthew 27,887-2\Notice of Removal LWS.wpd

3



Served _____ SAME
Relationship _____
Time 28:02 Date 7-8-05
Address _____
Constable Services _____

**JEFFREY D. GOOCH  (7863)**
**BRADLEY L. BOOKE (9984)**
**RYAN M. SPRINGER (9942)**
*MORIARITY, GOOCH, BADARUDDIN & BOOKE, LLC*
9 Exchange Place, Suite 700
Salt Lake City, Utah 84111
TELEPHONE: (801) 521-0811
FACSIMILE:   (801) 521-0546

**BRUCE W. SHAND (2918)**
*ATTORNEY AT LAW*
4505 S. Wasatch Blvd., Suite 340
Salt Lake City, Utah 84124
TELEPHONE: (801) 424-2766
FACSIMILE:   (801) 424-2772

*Attorneys for Plaintiffs*

# IN THE COURT OF THE FOURTH JUDICIAL DISTRICT IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| JILL MILLER TARBET and LISA MILLER, | SUMMONS |
| Plaintiffs, | |
| v. | Civil No. 050401865 |
| MATTHEW E. MILLER; ANGELES A. ACEITUNA, a.k.a., ANGELES A. MILLER; and JOHN and JANE DOES I-VI. | Judge Fred D. Howard |
| Defendants. | |

THE STATE OF UTAH TO THE ABOVE NAMED DEFENDANT, MATTHEW E. MILLER:

**MATTHEW E. MILLER**
**1270 East 200 North**
**Provo, Utah 84604**

You are hereby summoned and required to file and answer in writing to the attached First Amended Complaint with the Clerk of the above-entitled Fourth District Court, located at 125 North 100 West, Provo, Utah 84601 and to serve upon or mail to Plaintiffs' attorney, at the address shown herein, a copy of said answer, within (20) days after service of this Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in said First Amended Complaint, which has been filed with the Clerk of the Court and a copy of which is hereto annexed and herewith served upon you.

DATED this 50 day of June 2005.

MORIARITY, GOOCH, BADARUDDIN & BOOKE, LLC

Jeffrey D. Gooch   (7863)
Bradley L. Booke   (9984)
Ryan M. Springer (9942)
9 Exchange Place, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 521-0811
Facsimile:  (801) 521-0546

*Attorneys for Plaintiffs*





JEFFREY D. GOOCH (7863)
BRADLEY L. BOOKE (9984)
RYAN M. SPRINGER (9942)
MORIARITY, GOOCH, BADARUDDIN & BOOKE, LLC
9 Exchange Place, Suite 700
Salt Lake City, Utah 84111
TELEPHONE: (801) 521-0811
FACSIMILE: (801) 521-0546

BRUCE W. SHAND (2918)
ATTORNEY AT LAW
4505 South Wasatch Boulevard, Suite 340
Salt Lake City, Utah 84124
TELEPHONE: (801) 424-2766
FACSIMILE: (801) 424-2772
   *Attorneys for Plaintiffs*

---

## IN THE FOURTH JUDICIAL DISTRICT COURT
## FOR UTAH COUNTY, STATE OF UTAH

---

| | |
|---|---|
| JILL MILLER TARBET and LISA MILLER, <br><br>     Plaintiffs, <br> vs. <br><br> MATTHEW E. MILLER; ANGELES A. ACEITUNA, *a.k.a.*, ANGELES A. MILLER; and JOHN AND JANE DOES I – VI. <br><br>     Defendants. | **FIRST AMENDED COMPLAINT** <br><br> Case No: 050401865 <br><br> Judge Fred D. Howard |

---

COME NOW Plaintiffs, by and through counsel, and hereby complain for causes of action, alleging as follows:

## FACTS COMMON TO ALL CAUSES OF ACTION

1.      Plaintiff Jill Miller Tarbet is a resident of Weston, Idaho and the natural daughter of Earl A. and Elaine M. Miller.

2.      Plaintiff Lisa Miller is a resident of Wallace, Idaho and the natural daughter of Earl A. and Elaine M. Miller.

3.      Defendant Matthew E. Miller is a resident of Utah County, State of Utah; the son of Earl A. and Elaine M. Miller, the brother of Plaintiffs Jill Tarbet and Lisa Miller, and a Director of Miller Ski Company, Inc., a Utah corporation; and president, member, director, shareholder, or otherwise affiliated with multiple additional entities and enterprises as detailed more fully below.

4.      Defendant Angeles A. Aceituna, *a.k.a.* Angeles A. Miller is a resident of Utah County, State of Utah, and is the President and Director of Miller Ski Company, Inc., a Utah corporation; and president, member, director, shareholder, or otherwise affiliated with multiple additional entities and enterprises as detailed more fully below.

5.      Upon information and belief, Defendant Does I – VI are members of the Matthew E. Miller and/or Angeles A. Aceituna families, and have participated, directly or indirectly, in the conduct of the affairs of various corporate entities registered in the State of Utah, and have participated, directly or indirectly, with the tortious and illegal conduct of Defendants Matthew E. Miller and Angeles A. Aceituna, as alleged herein.

6.      Earl A. Miller was born in February, 1925.

7.      Elaine Mellor was born in May, 1925.

8.      Earl A. Miller married Elaine Mellor, and four children were born, to wit, Plaintiff Jill Miller Tarbet (1953); Plaintiff Lisa Miller (1957); Kim Miller (1959); and Defendant Matthew E. Miller (1964).

9.      From the 1940's through the 1950's, Earl A. Miller began designing, marketing, and distributing an innovative multi-directional release ski binding.

10.     In order to market his invention, Earl A. and Elaine M. Miller spent years traveling across the country, and Earl gained international recognition by deliberately throwing himself into terrible downhill tumbles to demonstrate the ski binding's safety and utility.

11.     On or about November 4, 1953, Earl A. and Elaine M. Miller founded Miller Ski Company, Inc., a Utah corporation.

12.     Earl A. Miller regained the skiing spotlight that year by offering cash awards of between $100.00 and $500.00 to anyone injured using the Hanson bindings.

13.     During the 1960 Winter Olympics, more than ten Olympic ski teams used Earl A. Miller's ski binding racing toe, and world-wide sales grew to more than 500,000 ski bindings during the next twenty years.

14.     In 1961, Earl A. Miller again revolutionized the skiing industry by introducing his ski brake, which eliminated the need for "safety" straps that were notorious for injuring skiers during falls.

15.     Between 1963 and 1972, Earl A. Miller registered at least eight patents with the United States Patent and Trademark Office, including his ski brake (or "ski stop") (U.S. Patent

No. 3083028) and various versions of his multi-directional release binding (*e.g.*, US Patents No. 3233911, No. 3330572, No. 3421771).

16.    By 1962, Miller Ski Company, Inc. was rated as a "Million Dollar Company" in Dunn & Bradstreet.

17.    Throughout the 1970's, the ski industry suffered declining revenues, yet Miller Ski Company, Inc. retained approximately 19% of the world ski binding business.

18.    In the 1980s, Miller Ski Company, Inc. began to expand and diversify, and went from being a ski and ski binding manufacturer and wholesaler to a ski supply retailer selling ski bibs, gloves, ski packages, recreation and sporting equipment, etc.

19.    As the sales and marketing of Earl A. Miller's products increased, he and Elaine M. Miller began amassing a substantial estate of money and real property including, but not limited to, real properties located at: 1270 East 200 North, Provo, Utah; 1175 - 1185 North 1200 West, Orem, Utah; 650 North 200 East, Orem, Utah; 400 West Center Street, Orem, Utah; Lots 50 and 51, 800 North 1550 West, Orem, Utah; 317 West 4650 North, Orem, Utah; a cabin at Aspen Grove/Sundance; etc.

20.    Because of Earl A. Miller's preeminence as a safety-conscious ski industry insider, he soon found himself being called upon to testify as an expert witness in numerous products liability suits involving ski equipment.

21.    Because of his experience in these lawsuits, as well as the continued growth of his company and personal estates, Earl A. Miller became concerned with preserving his and Elaine M. Miller's estate for their posterity.

22.     During a conversation with an attorney, Earl A. Miller was advised that in order to preserve his estate, he and Elaine M. Miller should divest themselves of all title to and ownership of tangible assets and real property so as to preserve the estate for their heirs.  Over the course of several years, employing various methods of differing levels of sophistication, Earl A. Miller and Elaine M. Miller began to devise an estate plan that would preserve their wealth and assets for their posterity.

23.     In 1985, upon returning from approximately eighteen months abroad, Defendant Matthew E. Miller resumed part-time work at Miller Ski Company, Inc. and his undergraduate studies at Utah State University.

24.     In 1986, while enrolled as a student at Utah State University, Defendant Matthew E. Miller traveled to Madrid, Spain, as part of a study abroad program.  There he met Defendant Angeles A. Aceituna, to whom he was later married.

25.     At some point after 1986, Defendants Matthew E. Miller and Angeles A. Aceituna devised a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, by manipulating Earl A. and/or Elaine M. Miller into believing that Defendant Matthew E. Miller would assist Earl A. and/or Elaine M. Miller with the administration of their estate and assets and effectuate Earl A. and Elaine M. Miller's testamentary intent to distribute their estate and assets equally among their four children.

26.     In furtherance of this scheme, between 1986 and 2002, Defendants Matthew E. Miller and Angeles A. Aceituna materially misrepresented facts about Defendant Matthew E. Miller's conduct relating to the Earl A. and Elaine M. Miller

estate plans and various corporate affairs to Plaintiffs and Earl A. and Elaine M. Miller by representing and suggesting that the assets would be protected in various trusts and/or annuities and/or corporate entities that would preserve the corpus of the estate for Earl A. and Elaine M. Miller's four children while protecting the corpus from creditors and limiting its liability. Instead, Defendants Matthew E. Miller and Angeles A. Aceituna engaged in a series of acts and transactions designed to divest Earl A. and Elaine M. Miller and Miller Ski Company, Inc., of their assets and estate, and secure for Defendants Matthew E. Miller and Angeles A. Aceituna the wrongful possession or disposition of the assets and estate without the consent or knowledge of Earl A. and/or Elaine M. Miller or Plaintiffs.

27.     Also in furtherance of the scheme, Defendants Matthew E. Miller and Angeles A. Aceituna unduly influenced Earl A. and/or Elaine M. Miller into consenting to Defendants Matthew E. Miller and Angeles A. Aceituna's acts and transactions designed by Defendants to divest Earl A. and Elaine M. Miller and Miller Ski Company, Inc., of their assets and estate, and secure the wrongful possession and/or disposition of the assets and estate for Defendants Matthew E. Miller, Angeles A. Aceituna, and Does I – VI's benefit.

28.     Also in furtherance of the scheme, from approximately 1988 through the present, Defendants Matthew E. Miller and Angeles A. Aceituna made multiple misrepresentations to Plaintiffs and to Earl A. and Elaine M. Miller about the existence of trusts and trust documents, funding of trusts, effects and purposes of certain real property conveyances, and multiple other material facts, thereby inducing Plaintiffs and

Earl A. and Elaine M. Miller to rely on Defendants Matthew E. Miller and Angeles A. Aceituna's misrepresentations.

29.     On or about December 31, 1986, the State of Utah dissolved Miller Ski Company, Inc. for failing to file for renewal.  Notwithstanding its involuntary dissolution, it did not cease operations, nor formally "wind up" any of its business affairs.

30.     In 1988, Defendant Matthew E. Miller received two bachelor's degrees from Utah State University; one in business administration and the other in Spanish.

31.     On September 7, 1988, a new corporation also registered as Miller Ski Company, Inc. was formed to continue making ski bindings and archery products.

32.     According to Defendant Matthew E. Miller, he became president of Miller Ski Company, Inc. in 1988. By other accounts, Matthew Miller did not become president of Miller Ski Company, Inc. until 1998.

33.     As late as November 3, 1991, Earl A. Miller was executing documents listing himself as president of Miller Ski Company, Inc., with Kellen Tarbet as Vice President, and Plaintiff Jill Miller Tarbet as Secretary and Treasurer.

34.     In August 1990, Defendant Matthew E. Miller began law school at the J. Reuben Clark Law School at Brigham Young University in Provo, Utah.

35.     During the first term of his second year as a law student (1991), Defendant Matthew E. Miller took a course on Federal Tax (Federal Tax I) from Professor J. Clifton Fleming.

36.    During the second term of his second year as a law student (1992), Defendant Matthew E. Miller took another course on Federal Tax (Federal Tax II) from Professor John Welch.

37.    Also during the second term of his second year as a law student (1992), Defendant Matthew E. Miller took a course on Real Estate Finance from Professor James Backman.

38.    During the first term of his third year as a law student (1992), Defendant Matthew E. Miller took a course on Real Estate Development from adjunct faculty.

39.    During the second term of his third year as a law student (1993), Defendant Matthew E. Miller took a course on Advanced Estate Planning from adjunct professor J. Keith Adams, who then practiced law in the areas of estate planning and benefits.

40.    On or about August 26, 1992, another corporation, Miller Snowboard Corporation, was organized, with Defendant Angeles N. Aceituna, Earl A. Miller, and Elaine M. Miller listed as principals.

41.    Eventually, Defendant Matthew E. Miller began exercising greater control over the affairs of Miller Ski Company, Inc. and Miller Snowboard Corporation.

42.    Additionally, Defendant Matthew E. Miller represented to Plaintiffs and Earl A. and Elaine M. Miller that because of his legal education, he could create and develop a long term plan for preservation and distribution of Earl A. and Elaine M. Miller's estate, including the various real properties and the assets of the various Miller companies.

43.     Based on Defendant Matthew E. Miller's representations, Earl A. and Elaine M. Miller entrusted Defendant Matthew E. Miller with the duties and obligations of planning for the preservation and eventual distribution of the Miller estate, including the various real properties and the assets of the various Miller companies pursuant to Earl A. and Elaine M. Miller's testamentary intent.

44.     Despite Defendants Matthew E. Miller and Angeles A. Aceituna's repeated reassurances to Plaintiffs and Earl A. and Elaine M. Miller that Defendant Matthew E. Miller had enacted a wealth protection and estate plan that effectuated Earl A. and Elaine M. Miller's testamentary intent to equally distribute the estate to all four of their children, Defendants Matthew E. Miller and Angeles A. Aceituna had instead diverted estate and company assets into their own possession without ever providing for any mechanism by which to accomplish Earl A. and Elaine M. Miller's testamentary intent regarding distribution of estate and company assets.

45.     In late 2000 or early 2001, Earl A. Miller was battling cancer, and became concerned with ensuring that his intentions regarding distribution of estate and company assets were effectuated.  During this period, he sent multiple letters and faxes to each of the four Miller children, collectively and individually, expressing his desire to ensure that all of the details with respect to his estate plan were in place.

46.     Also during this period, Plaintiffs became increasingly suspicious of Defendants Matthew E. Miller and Angeles A. Aceituna's representations regarding their management of the estate and companies, and communicated their suspicions to

Earl A. and Elaine M. Miller in response to Earl A. Miller's correspondence on the subject.

47.     On or about February 1, 2002, Earl A. Miller sent a letter to the four Miller children stating "I want the estate settled now."

48.     To that end, in the same letter, Earl A. Miller praised Defendant Matthew E. Miller for his work on the business and estate planning matters, but demanded an accounting of company and estate assets from Defendant Matthew E. Miller, stating "I must have now—from Matthew—[a]ll names and information on the two L.L.C.'s. Also what he has received in total from the estate . . . . Matthew is free to run his own life and his own business; however, it cannot encumber in any way the other five persons involved."

49.     In the February 1, 2001 letter, and in multiple other pieces of correspondence and personal notations, Earl A. Miller unequivocally expressed understanding that he shared a fifty percent (50%) interest in the corpus and assets of the estate and the various Miller Ski companies (e.g. "Elaine owns half and I own half"), and that "[m]y 50% goes to the four children equally."

50.     In a letter to Matthew, dated February 3, 2001, Earl A. Miller reiterated his understanding, based on Defendant Matthew E. Miller's repeated representations, that "the [estate] property is already in two L.L.C.'s and everyone shares equally."

51.     In the same February 3, 2001 confidential letter to Matthew, Earl A. Miller stated that if Defendant Matthew E. Miller were to squander or lose "estate money—it comes out of his share of the estate."

52.     On February 6, 2001, Defendant Matthew E. Miller responded to his father's letters and requests for an accounting of the estate and corporate assets by sending a fax to Earl that said, "Apparently, you've become obsessed and are doing everything you can to turn my family against me. I guess you've decided to blow things apart . . . [b]ut you won't believe what the fall-out will be." Defendant Matthew E. Miller continued, "Upset over your plethora of letters and calls, Lisa called Spokane to find the 'meanest' attorney she could find . . . . Are you all insane?" And Defendant Matthew E. Miller concluded, "You can spend your years vilifying and undermining your son if you so wish. But now is not the time to light a fire that will blow up into a raging inferno. If you don't back off and get control of Lisa, I guess we'll be prepared for the worst. You've accomplished your goal, apparently, and turned your family against itself."

53.     The next day, Earl A. Miller responded to his son's defensiveness in a letter dated February 7, 2001. There, Earl A. Miller wrote:

> Matthew, I told Lisa to knock off the lawyer bit—at least for now. But I told her that I would get full information about everything in the estate and get it to her . . . [and that] in my opinion Matthew had set up two L.L.C.'s that were good solid planning, and were EQUAL to everyone in the estate.

(Caps in original.)

54.     Additionally, in his February 7, 2001 letter to Defendant Matthew E. Miller, Earl A. Miller again repeated his demand for specific, itemized accounting of Defendant Matthew E. Miller's management of the estate, specific details regarding the estate plan, and management and costs of the various companies.

55.     Defendants Matthew E. Miller and Angeles A. Aceituna did not provide the requested accounting, but instead provided a general statement that under the estate plan, "[t]he kids [would] get the equivalent of $30,000 a year, each in % of the Properties LLC (That's $20,000 (10,000 + 10,000) to each of them from [Earl] and Elaine, magnified by the LLC discount taken for the total assets of the LC, which I've tried to keep up over 35%)."

56.     Neither Plaintiffs, nor apparently Earl A. Miller, were satisfied and from March 1, 2001 through August, 2001, Earl A. Miller drafted various documents attempting to set forth a comprehensive accounting of what he, based on the representations of Defendants Matthew E. Miller and Angeles A. Aceituna, understood the estate plan and state of corporate affairs to be.

57.     By September 2001, Defendants Matthew E. Miller and Angeles A. Aceituna's reluctance to provide the accounting and details on the estate plans, as requested, concerned Plaintiffs and Earl A. Miller.  They suspected that Defendants had been misleading the family about the estate plan and the state of Miller company affairs.

58.     In a fax to Defendant Matthew E. Miller dated September 21, 2001, Earl A. Miller wrote that Defendant Matthew E. Miller had been operating side businesses, which did not contribute funds or assets to the estate, using estate properties, moneys, and assets, and that "if you want to keep having this taken out of your inheritance . . . it's your turkey!"

59.     In the same fax, Earl continued, stating:

I don't know what you are talking about, and [why] you hide everything from the family. If you ever try to change anything on the real estate like you tried to do selling the apartment contract[,] you will end up in white hell with the whole ceiling falling on you. You didn't build the goddamn estate and don't control it. It is 25% yours until I disinherit you for mismanagement. I worked 14 hours a day for forty years, and you have three sisters. You have denied more than forty requests for the names on the two L.L.C.'s. You dive into things and correct me if I am wrong[, but] [y]ou have never had a steady job (except in Spain) . . . . [;] [y]ou have never paid anything yourself on the [Miller Ski companies'] bank loans . . . . have you ever made money once even one project????[;] [y]ou have never paid rent on the building, and have blocked it from being rented to solid renters, [etc.]

60.     For several months, Earl A. Miller made multiple, additional requests for an accounting of corporate assets and affairs, and specific details about the estate plan.

61.     Despite the repeated requests from Plaintiffs and Earl A. Miller, Defendants Matthew E. Miller and Angeles A. Aceituna continued to be evasive about the details of the estate plan and the state of corporate affairs.

62.     On March 17, 2002, Defendant Matthew E. Miller sent Earl A. Miller a fax recommending that he see a psychiatrist and accusing him of "stir[ring] up trouble and do[ing] no good." In the fax, Defendant Matthew E. Miller also discussed the whereabouts of estate and corporate funds, stating:

As I said to you some time ago, the money is in various investments, principally involving government contracts that are mid and long-term investments with the US Department of Defense. They are on track, recession proof, and will pay out a large rate of return. This is not make-believe or one of Jill's or Lisa's attempts at exaggeration, histrionics, or melodramatics. It is highly classified and the more noise and threats about lawsuits and disruptive behavior you and my siblings display, the less can be said about it—obviously. It cannot be touched by Elaine, or me, or by anyone in this disturbed family, or their creditors. I have nothing more to say about it until we meet in person and can talk privately. You should also be prudent in talking about it.

63.     In the same March 17, 2002 fax, Defendant Matthew E. Miller represented to Earl A. Miller that because of Defendant Matthew E. Miller's estate planning efforts, all four of the Miller children "will have a fantastic future."

64.     On June 14, 2002, Earl A. Miller died.

65.     The death of Earl A. Miller did not resolve the issues surrounding Defendants Matthew E. Miller and Angeles A. Aceituna's actions regarding the Miller estate and companies; on the contrary, tensions between Defendants Matthew E. Miller and Angeles A. Aceituna and Plaintiffs continued to escalate, while communications dissipated.

66.     In what was perhaps a final effort to settle the discord that had arisen amongst her children, Elaine M. Miller drafted a letter "To [her] family."

67.     In the letter, Elaine M. Miller stated:

The unfairness which has been shown so far cannot go on. I believe Earl and [I] could live with the careful estate planning which has been suggested. It is worked out carefully and very thoughtfully to give equal inheritances over the longer run . . . . None of us is willing to live with a lop-sided deal worked out by one or two persons for personal convenience.

If one of the children is to be given a company, ignoring the fact there are 4 children, an accounting must be made. It's stupid for Earl and [I] [to] let [our]selves get involved in a big fight, then the lawyers end up with everything. Any parent wants to leave a great inheritance, but it is up to the parents. I am not a spot on the wall. What has been going on here is not right.

68.     On October 23, 2003, Elaine M. Miller died.

69.     Following the deaths of Earl A. and Elaine M. Miller, Defendants Matthew E. Miller and Angeles A. Aceituna undertook no action whatsoever to probate the Miller estate, nor to divide and distribute the Miller estate—including its corporate holdings, assets, and real properties—pursuant to Earl A. and Elaine M. Miller's oft-stated intentions that all property be divided equally among the four surviving Miller children.

70.     On October 25, 2004, Plaintiffs petitioned the Fourth District Court to be appointed as personal representatives of the estates of Earl A. Miller and Elaine P. Miller. *In re Estate of Earl Andrew Miller*, No. 043400551 (4th Dist. Ct. 10/25/2004); *In re Estate of Elaine Mellor Miller*, No. 043400552 (4th Dist. Ct. 10/25/2004).

71.     Upon receiving notice of the pending probate court action, on November 1, 2004, Defendant Matthew E. Miller sent a letter to Plaintiffs stating:

> I don't have time right now to waste on one hearing after another. There are more urgent and important things to be doing right now. You don't want me going through all the old deeds, faxes, affidavits, and documents and to spend a lot of time putting you in your places once and for all . . . . So let's get to the point: I have no legal obligation to you whatsoever. But . . . you can be big beneficiaries of our work and growth. You can be "set for life" if things go as planned. You can either benefit from our energies working productively, or you can have them working against you. You decide . . . . Bluntly and grossly put: <u>if you mess with me right now, you'll get nothing. Ever.</u> That's a promise. But, on the other hand, if you just hang in there and show a little patience, those monthly checks should continue to grow. And grow.

(Underlining in original.)

72.     Undeterred, Plaintiffs determined to proceed with the probate hearing.

73.     Upon being advised of as much, on November 11, 2004, Defendant Matthew E. Miller wrote a letter to Plaintiffs' attorney, stating:

> I write this to you out of professional courtesy. My sisters could have contacted me, but they chose to continue to go through lawyers . . . . My sisters' time is running out. I keep my promises. They can either trust in me, their brother, or in the *super fair and efficient "legal system."* Their choice . . . . I have a company to run and every minute my sisters bother me with hearings and nonsense takes away from by being able to produce resources that could be used for their benefit . . . . We have a plan that we are going to follow it [sic]. With all due respect, it doesn't involve you.
>
> * * *
>
> Okay, Mr. Booke, enough positioning. They have until 5 p.m. today, November 11. I need confirmation by fax that the hearing's been cancelled and then we can all get on with more productive pursuits. We'll stick to our plan.
>
> But if they want to push this along and start the litigation process, then I'll cancel my appointments and we'll see you on Monday. A small step for you, a giant leap for them. Right off of a cliff, so to speak.
>
> * * *
>
> Now, on a side note: Mr. Booke, we have 4000 injured snowboarders on our website that are potential plaintiffs in a plethora of lawsuits. Obviously, I cannot take these cases myself, as I am an expert witness for the plaintiffs. I have a PA firm to cover the East Coast cases, and a Provo firm for this area. If you know of a Salt Lake firm that would like to participate, please let me know.

(Italics in original.)

74.     The probate hearing was not continued, however, and the probate matters are currently pending in the Fourth District Court.

75.     Plaintiffs have demanded relief, and Defendants have denied the same.

## FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT: UNDUE INFLUENCE

76.     Plaintiffs reallege and incorporate paragraphs 1 – 75 as if set forth fully herein.

77.     Defendants Matthew E. Miller and Angeles A. Aceituna had a confidential relationship with Earl A. Miller and/or Elaine M. Miller.

78.     Earl A. Miller and/or Elaine M. Miller were susceptible to Defendants Matthew E. Miller and Angeles A. Aceituna's influence.

79.     Defendants Matthew E. Miller and Angeles A. Aceituna used the confidential relationship to exercise undue influence and get Earl A. Miller and/or Elaine M. Miller to make inter vivos transfers that changed their living estate and undermined their testamentary intentions.

80.     Alternatively, Defendants Matthew E. Miller and Angeles A. Aceituna used the confidential relationship to exercise undue influence and gain access to documents, accounts, etc. that enabled Defendants Matthew E. Miller and Angeles A. Aceituna to facilitate inter vivos transfers that changed Earl A. Miller and/or Elaine M. Miller's living estate and undermined their testamentary intentions.

81.     Defendants Matthew E. Miller and Angeles A. Aceituna's undue influence deprived Earl A. Miller and/or Elaine M. Miller of free will at the moment they executed various inter vivos transfers, contracts, deeds, designations of beneficiaries, etc.; or alternatively, authorized and/or permitted Defendant to execute various inter vivos transfers, contracts, deeds, designations of beneficiaries, etc. on Earl A. Miller and/or Elaine M. Miller's behalves, at the moments of execution and/or authorization.

82.     Defendants Matthew E. Miller and Angeles A. Aceituna's exercise of undue influence resulted in unconscionable inter vivos transfers, thereby undermining the testamentary intentions of Earl A. Miller and/or Elaine M. Miller.

83.    Earl A. Miller and/or Elaine M. Miller's purported inter vivos transfers and living estate and post-death distribution plans should be declared void because of Defendants Matthew E. Miller and Angeles A. Aceituna's exercise of undue influence.

## SECOND CLAIM FOR RELIEF – CONSTRUCTIVE TRUST

84.    Plaintiffs reallege and incorporate paragraphs 1 – 83 as if set forth fully herein.

85.    Earl A. Miller and Elaine M. Miller made express representations to Plaintiffs about Earl A. Miller and Elaine M. Miller's living estates and post-death distribution plans of specific property.

86.    The Defendants' fraudulent and wrongful conduct with respect to Earl A. Miller and Elaine M. Miller's living estates and post-death distribution plans regarding specific properties have deprived Plaintiffs of the use and possession of that property, to which they have vested and immediate rights.

87.    Specifically, Defendants engaged in fraudulent and wrongful conduct regarding property and assets comprising Earl A. Miller and Elaine M. Miller's living estates and subject to their intended post-death distribution plans, including, but not limited to, the real properties listed above, the various Miller companies and their assets, etc.

88.    By their wrongdoing, Defendants have acquired and currently hold title to or otherwise possess the properties described above, and/or are beneficiaries of trusts, annuities, or corporate actions of value.

89.    If permitted to keep their ill-gotten gains, Defendants would be unjustly enriched by being allowed to profit by their wrongdoing.

90.     There exists a nexus between the Defendants' wrongful conduct and those

specific properties described above which warrants the imposition of a constructive trust.

### THIRD CLAIM FOR RELIEF: QUIET TITLE

91.     Plaintiffs reallege and incorporate paragraphs 1 – 90 as if set forth fully herein.

92.     Plaintiffs, individually and/or collectively, are the record title holders

and/or rightful title holders of certain real properties lying and situated in Utah

County, State of Utah, and bounded and described as follows:

a)   COM. 611.1 FT S & 807.06 FT E OF NW COR SEC 10, T 5 S, R 3 E,
     SLM; S 70 15' E 38.4 FT; S 140 FT; N 70 15' W 38.4 FT; N 140 FT TO
     BEG. DESIGNATED AS LOTS 8 & 9 ASPEN GROVE SUB. .12 AC

b)   COM. 709.87 FT S & 881.38 FT E OF NW COR OR SEC 10, T 5 S, R 3
     E, SLM; N 68 10' W 40.99 FT; N 70 FT; S 64 13' E 42.3 FT; S 66.74 FT
     TO BEG. AREA 0.7 OF AN ACRE

c)   UNIT 12, PHASE 1, GEORGETOWN ON THE PARK PUD,
     AMENDED

d)   LOT 7, BLOCK 2, OAK HILLS SUBDIVISION

e)   COM. ALONG SEC LINE S 0 DEG 52' E 1188 FT & N 88 DEG 58' W
     685.83 FT & S 1 DEG 02' W 120 FT FR NE COR SEC 27, T6S, R2E,
     SLM; S 1 DEG 02' W 100 FT; N 88 DEG 58' W 5 FT; N 1 DEG 02' E
     100 FT; S 88 DEG 58' E 5 FT TO BEG. AREA .01 OF AN ACRE.

f)   COM. 782.47 FT S 1037.90 FT E OF NW COR OF SEC 10, T 5 S, R 3
     E, SLM; S 65 19' E 55.79 FT; S 28.6 FT; S 53 W 24.08 FT; N 74 W 32.7
     W 32.7 FT; N 57.37 FT TO BEG. AREA .05 OF AN ACRE.

g)   COM. 709.87 FT S & 881.38 FT E OF NW COR SEC10, T 5 S, R 3 E,
     SLM; N 66.74 FT; S 64 13' E 84.6 FT; S 64.07 FT; S 63 28' E 89 07 FT; S
     57.37 FT; N 74 W 123.77 FT; N 63.44 FT; N 68 19' W 40.99 FT TO
     BEG. THIS TRACT IS DESIGNATED AS LOTS 12, 13, 17, 20, & 22
     OF APSEN GROVE SUB. AREA .272 OF AC.

h)   LOT 3, PLAT B, MILLER SUBDIVISION. AREA 2.69 AC.

93.    Defendants claim and assert an interest therein adverse to Plaintiffs by reason of and through various void and voidable transactions made by or at the direction of Defendants.

94.    The claims of Defendants are without any right whatever, and Defendants do not have any estate, right, title, or any interest whatsoever in the aforementioned property, or any part thereof.

## FOURTH CLAIM FOR RELIEF – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT (18 U.S.C. § 1961 et seq.)

95.    Plaintiffs reallege and incorporate paragraphs 1 – 94 as if set forth fully herein.

96.    Plaintiffs have been injured in their businesses and/or property by reason of RICO violations and therefore have standing to pursue a claim for relief under 18 U.S.C. § 1964(c).

97.    At all times relevant to this complaint, Elaine M. Miller Rentals, LLC was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Elaine M. Miller Rentals, LLC engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

98.    At all times relevant to this complaint, Elaine M. Miller Properties, LLC was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Elaine M. Miller Properties, LLC engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

99.     At all times relevant to this complaint, Lilac Management, LLC was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Lilac Management, LLC engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

100.    At all times relevant to this complaint, Miller Snowboard Corporation was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Miller Snowboard Corporation engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

101.    At all times relevant to this complaint, Miller Ski Company Inc. was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Miller Ski Compnay Inc. engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

102.    At all times relevant to this complaint, MST Funding & Adquisitions, L.L.C. was an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making. At all times, Miller Ski Compnay Inc. engaged in or has had activities that affect interstate commerce, and is therefore an enterprise as defined by 18 U.S.C. § 1961(4).

103.    At all times relevant to this complaint, Defendants, individually and/or collectively, are or have been directly or indirectly associated with Miller Ski Company Inc.;

Miller Snowboard Corporation; Revolution Manufacturing Company; Elaine M. Miller
Rentals, LLC; Elaine M. Miller Properties, LLC; Elaine M. Miller Investments, L.C., Lilac
Management, L.L.C.; Kai Jo Capital, Inc.; Miller Enterprises, L.L.C.; Matthew E. Miller, P.C.;
MST Funding & Adquisitions, LLC; Miller Sports Technologies, Inc.; Miller Sports
International, L.L.C.; McKinley Mining & Management, L.L.C.; Seventh Millennium, L.L.C.,
and Pieces of Time, L.L.C., all and/or each of which are enterprises as defined by 18 U.S.C. §
1961(4).

    104.   Defendants, individually and/or collectively, have conducted or participated,
directly or indirectly, in the conduct of the affairs of those enterprises.

    105.   Defendants, individually and/or collectively, have used income derived from
racketeering activity in order to maintain interest in and control of one or more of those
enterprises.

    106.   Defendants, individually and/or collectively, made material misrepresentations
in furtherance of a scheme to defraud, obtain money or property by false or fraudulent
pretenses.

    107.   Over the course of several years, Defendants' conduct included the commission
of predicate acts including, but not limited to:

    a)   Fraud. Defendants materially misrepresented facts about Defendant Matthew E.
    Miller's conduct as trustee of any family trusts and administrator of Earl A.
    Miller and Elaine M. Miller's estates by representing the existence of a trust and
    trust documents, but never funding any trusts and diverting Miller Estate assets
    into his own name and the names of various corporate shells without the consent
    or knowledge of Earl A. and/or Elaine M. Miller or Plaintiffs; or alternatively, by
    unduly influencing Earl A. and/or Elaine M. Miller into consenting to such
    actions.  The Defendants knew of the falsity of the representations concerning the
    administration of Earl A. and/or Elaine M. Miller's estate, assets, and/or trusts;

and Miller Ski Company, Inc.'s assets; or alternatively, should have known but acted in reckless disregard for the falsity of their representations. Defendants' misrepresentations were made with the intent to induce Plaintiffs' reliance, and Plaintiffs' subsequent reliance was justifiable. Plaintiffs' sustained pecuniary damages as a result of the Defendants' material misrepresentations.

b)      Wire Fraud. On or about August 9, 1997, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller regarding various, distinct corporate entities ostensibly created as part of Earl A. and Elaine M. Miller's estate plan to equally distribute twenty-five percent (25%) of the estate to each of their four children.

c)      Wire Fraud. On or about August 27, 1998, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller regarding transfers of interests in assets into Elaine M. Miller Properties, LLC and distributions of percentages of proceeds.

d)      Wire Fraud. On or about October 3, 1998, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller regarding LLC ownership, trusts, and general estate matters.

e)      Wire Fraud. On or about October 7, 1998, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller.

f)   <u>Wire Fraud</u>. On or about October 10, 1998, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice; to wit in violation of 18 U.S.C. § 1343, a facsimile transmission to Earl A. Miller regarding trust and estate matters.

g)   <u>Wire Fraud</u>. On or about November 22, 1998, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller instructing him to "send money and get out of the way."

h)   <u>Mail Fraud</u>.   On or about February 1, 1999, Defendant Matthew E. Miller, having devised a scheme to defraud, to obtain money or property by false or fraudulent pretenses caused a letter to be sent to Earl A. Miller through the mail, for the purpose of executing the scheme, in violation of 18 U.S.C. § 1341.

i)   <u>Wire Fraud</u>. On or about May 9, 1999, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller setting forth Defendant Matthew E. Miller's purported accounting on rental properties and demanding money.

j)   <u>Mail Fraud</u>.   On or about February 3, 2001, Defendant Matthew E. Miller, having devised a scheme to defraud, to obtain money or property by false or fraudulent pretenses caused a letter discussing various LLCs and the holding of assets to be sent to Earl A. Miller through the mail, for the purpose of executing the scheme, in violation of 18 U.S.C. § 1341.

k)   <u>Wire Fraud</u>. On or about February 6, 2001, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of

executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Earl A. Miller accusing Plaintiff Lisa Miller of seeking the "meanest" attorney she could find.

l)   <u>Mail Fraud/Wire Fraud</u>. On or about November 1, 2004, Defendant Matthew E. Miller, having devised a scheme to defraud, to obtain money or property by false or fraudulent pretenses caused a letter to be sent to Plaintiffs through the mail for the purpose of executing the scheme, in violation of 18 U.S.C. § 1341; or alternatively, On or about November 1, 2004, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to Plaintiffs instructing them to abandon the probate actions or lose their inheritances.

m)   <u>Witness/Victim Tampering</u>. On or about November 1, 2004, Defendant Matthew E. Miller knowingly used intimidation and threats in an attempt to persuade other persons, to wit, Plaintiffs Jill Miller Tarbet and Lisa Miller to abandon the probate actions or lose their inheritances, and did so with the intent to influence, delay, or prevent the testimony and participation of Plaintiffs in an official proceeding, to wit, a hearing in the probate actions filed in the Fourth District Court of the State of Utah, in violation of 18 U.S.C. § 1512.

n)   <u>Wire Fraud</u>. On or about November 11, 2004, Defendant Matthew E. Miller, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, a writing for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343; to wit, a facsimile transmission to attorney Bradley L. Booke attempting to persuade him to advise Plaintiffs to abandon their legal pursuits.

o)   <u>Witness/Victim Tampering</u>. On or about November 11, 2004, Defendant Matthew E. Miller knowingly used intimidation and threats in an attempt to persuade other persons, to wit, Plaintiffs Jill Miller Tarbet and Lisa Miller, and their attorneys to abandon the probate actions or lose their inheritances, and did so with the intent to influence, delay, or prevent the testimony and participation of Plaintiffs in an official proceeding, to wit, a hearing in the probate actions filed in the Fourth District Court of the State of Utah, in violation of 18 U.S.C. § 1512.

108.    The commission of these and other predicate acts, including those described in paragraphs 1 – 107 above, constitutes a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

109.    Defendants have associated with Miller Ski Company, Inc. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

110.    Defendants have associated with Miller Snowboard Corporation through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

111.    Defendants have associated with Revolution Manufacturing Company through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

112.    Defendants have associated with Elaine M. Miller Investments, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

113.    Defendants have associated with Elaine M. Miller Properties through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

114.    Defendants have associated with Elaine M. Miller Rentals, L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

115.    Defendants have associated with Lilac Management, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

116.    Defendants have associated with Kai Jo Capital through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

117.    Defendants have associated with Miller Enterprises, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

118.    Defendants have associated with Miller Sports Technologies, Inc. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

119.    Defendants have associated with Matthew E. Miller P.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

120.    Defendants have associated with Miller Sports International, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

121.    Defendants have associated with McKinley Mining & Management, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

122.    Defendants have associated with Seventh Millennium, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

123.    Defendants have associated with Pieces of Time, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

124.    Defendants have associated with MST Funding & Adquisitions, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

125.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Miller Ski Company, Inc. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

126.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Miller Snowboard Corporation through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

127.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Revolution Manufacturing Company through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

128.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Elaine M. Miller Investments, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

129.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Elaine M. Miller Properties through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

130.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Elaine M. Miller Rentals, L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

131.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Lilac Management, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

132.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the

enterprise Kai Jo Capital through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

133.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Miller Enterprises, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

134.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Miller Sports Technologies, Inc. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

135.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Matthew E. Miller P.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

136.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Miller Sports International, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

137.    Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise Seventh Millennium, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

138.     Defendants have received income derived, directly or indirectly, from this pattern of racketeering activity, and have used it to maintain interest in and control of the enterprise MST Funding & Adquisitions, L.L.C. through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

139.     As a direct and foreseeable result of Defendants' pattern of racketeering activity, and the conduct of the participants, Plaintiffs haves sustained losses to business and/or property in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH TESTAMENTARY EXPECTANCY

140.     Plaintiffs reallege and incorporate paragraphs 1 – 139 as if set forth fully herein.

141.     Plaintiffs had expectancies of testamentary inheritance and/or gift based on express representations made to them by Earl A. and Elaine M. Miller and Defendant Matthew E. Miller.

142.     It was reasonably certain that Plaintiffs' expectancies would have been realized but for interference.

143.     Defendants Matthew E. Miller and Angeles A. Aceituna affirmatively and intentionally interfered with Plaintiffs' expectancies through fraud, duress, and/or undue influence.

144.     As a result of Defendants Matthew E. Miller and Angeles A. Aceituna's tortious interference, Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF – FRAUD

145.     Plaintiffs reallege and incorporate paragraphs 1 – 144 as if set forth fully herein.

146.    Defendant made express representations to Plaintiffs about Earl A. Miller and Elaine M. Miller's living estates and post-death distribution plans.

147.    The representations were concerning material facts pertaining to Earl A. Miller and Elaine M. Miller's living estates and testamentary intentions.

148.    The representations were false, and Defendant knew and/or should have known that they were false.

149.    Despite Defendant's knowledge of the falsity of the representations, he nevertheless made them willfully and/or recklessly; or alternatively, willfully and/or recklessly omitted certain material facts; and misrepresented certain material facts to Plaintiffs.

150.    Defendant did so with the purpose of inducing Plaintiffs to act on the material misrepresentations.

151.    Plaintiffs, acting reasonably and in ignorance of the falsity of the material misrepresentations, relied upon them, were thereby induced to act, and were damaged thereby in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

152.    Plaintiffs reallege and incorporate paragraphs 1 – 151 as if set forth fully herein.

153.    Defendants' repeated assurances and promises regarding Defendants management of Miller corporate affairs and administration of Earl A. and Elaine M. Miller's estate, including such promises and assurances that Plaintiffs would receive twenty five percent (25%) and otherwise "have a fantastic future" based on Defendants' execution of the Miller estate plan were material facts.

154.    Defendant had a pecuniary interest in the administration of the Earl A. Miller and Elaine M. Miller living estates and post-death distribution plans and the corporate affairs of the various Miller companies, was in a superior position to know the material facts concerning those estates and plans for their administration, and should have reasonably foreseen that Plaintiffs were likely to rely on Defendants' representations and/or disclosures regarding the Earl A. Miller and Elaine M. Miller estates and companies and the administration thereof.

155.    Plaintiffs reasonably relied on Defendant to accurately and truthfully represent and/or disclose any facts regarding the Earl A. Miller and Elaine M. Miller estates and companies and the administration thereof, and were induced to act thereby, sustaining damage as a result in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF – CONVERSION AND MISAPPROPRIATION

156.    Plaintiffs reallege and incorporate paragraphs 1 – 155 as if set forth fully herein.

157.    At all relevant times, Plaintiffs were entitled to the chattel, assets, and property comprising portions of the body of the Miller estate and/or Miller company assets; or alternatively, to portions thereof.

158.    Defendants have willfully interfered with the chattel, assets, and property; or portions thereof, to which Plaintiffs were entitled.

159.    Defendants' willful interference was without lawful justification.

160.    As a sole, proximate, and foreseeable result of Defendants' willful interference, Plaintiffs have been deprived of the use and possession of the chattel, assets, and property comprising portions of the body of the Miller estate.

161.   Plaintiffs are entitled to damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF – CIVIL CONSPIRACY

162.   Plaintiffs reallege and incorporate paragraphs 1 – 161 as if set forth fully herein.

163.   The actions and conduct of Defendants, as complained of herein, were perpetrated for the object and purpose of depriving Plaintiffs of their property rights and privileges.

164.   The acts of said Defendants were undertaken with a meeting of the minds upon a course of action to impair and impede Plaintiffs' rights and privileges.

165.   The actions undertaken by said Defendants included one or more unlawful, overt acts.

166.   Plaintiffs have been damaged as the proximate result of Defendants' unlawful and overt actions in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

167.   Plaintiffs reallege and incorporate paragraphs 1 – 166 as if set forth fully herein.

168.   Defendants' conduct is and was outrageous and intolerable in that it offended the generally accepted standards of decency and morality.

169.   Defendants intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress.

170.   As a sole, proximate, and foreseeable result of Defendants' intentional and/or reckless conduct, Plaintiffs suffer severe emotional distress, and are entitled to damages in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF – UNJUST ENRICHMENT

171.   Plaintiffs reallege and incorporate paragraphs 1 – 170 as if set forth fully herein.

172.   Plaintiffs conferred a benefit upon Defendant.

173.   Defendant appreciated or knew of the conference of the benefit.

174.   Defendant accepted and retained the benefits under circumstances that made it inequitable for him to do so without payment or compensation of its value.

175.   Defendant was therefore unjustly enriched at Plaintiffs' expense in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF – NEGLIGENCE

176.   Plaintiffs reallege and incorporates paragraphs 1 - 175 as if set forth fully herein.

177.   Defendant owed Plaintiffs various duties of care.

178.   By Defendant's' acts and/or omissions, Defendant breached his duties of care to Plaintiffs.

179.   As a direct, sole, proximate, and foreseeable result of Defendant's breaches of his duties of care, Plaintiffs suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for the following:

a)   That judgment be entered in favor of Plaintiffs and against Defendant;

b)   The entry of a declaratory judgment declaring all contracts, deeds, documents, etc. pertaining to the living estates and testamentary intentions of Earl A. Miller and Elaine M. Miller void because of Defendant's undue influence;

c)   The creation of a constructive trust with Plaintiffs designated as administrators.

d) That the Defendants be required to set forth the nature of their several claims to and regarding the real properties described in Plaintiffs' Third Claim for Relief, and that all adverse claims of Defendants may be determined by a decree of this court and that by said decree it be declared and adjudged that Plaintiffs are the owners of the premises and that the Defendants have no estate, right, title, easement or interest whatsoever in Plaintiffs' property, and that the Defendants be forever barred and enjoined from asserting any claim in or to Plaintiffs' land;

e) That Plaintiffs be awarded all damages that are fair and just, including but not limited to trebled damages pursuant to 18 U.S.C. § 1964(c), as appropriate, and in an amount supported by the allegations in this compliant and the evidence adduced at trial, including pre and post judgment interest.

e) That Plaintiffs be awarded costs of suit incurred herein.

f) That Plaintiffs be awarded all other and further relief as the Court deems proper.

DATED this 28th day of June, 2005.

MORIARITY, GOOCH, BADARUDDIN
& BOOKE, LLC

BRUCE W. SHAND, ATTORNEY AT LAW

RYAN M. SPRINGER
Attorneys for Plaintiffs